The United States Court of Appeals for the Federal Circuit is now open and in session. I'll say the United States in its Honorable Court. Please be seated. So we have three cases this morning, and we will begin with number 16, 1355, St. Clair Intellectual Property v. Toshiba America. Thank you, Your Honor. Good morning. This case was a case against Toshiba in which 950 separate computer laptop models were accused of infringing the 163 patent. The jury rejected all of the claims, and there was no appeal from the trial. Toshiba sought fees under Section 285, and the court denied the motion. The court's ruling was an abuse of discretion because there was no comparative analysis under the Octane Fitness case, which was the basis for the Toshiba motion. There was undisputed... I'm sorry. Comparative analysis? What do you mean by that? I'm sorry, Your Honor. You said there was no comparative analysis. Yes, Your Honor. What do you mean by that? In other words, the Octane Fitness standard is, does the case stand out from others? Right. And Judge Druin said, not really. Well, I would submit to the court he didn't make that analysis. Is your position... I had the same question as Judge Toronto. Is your position that he should have said, all right, here are six other cases in which fees have not been granted, and this case is not like them? Is that what you mean by comparative analysis that was missing? Here's the district judge that is a very experienced district judge, no longer district judge, but was a very experienced district judge. Can't he say, I know a case that stands out from the normal cases just because I've seen so many of them? Well, Your Honor, I think that's a good question. And I think that the Supreme... So first of all, what I'm saying is the comparison has to be to other patent cases, not necessarily to ones in which there were 285 motions. So the issue of whether fees was granted is not part of what I'm saying. Okay, well, all patent cases then. Correct, yeah. Does he have to actually write in his order, here are five other patent cases, this is why this one is the same as or more or less in the same mode as the others, or this is different? Does that have to be in a 285 order? I believe it does, Your Honor. And, in fact, we've cited district court cases in our brief in which the district court in which he was sitting has done that, has said, I'm making a comparative analysis relative to other cases. Now, the Supreme Court didn't provide any guidance as to how to do that, and I fully appreciate that that's something that this court perhaps is going to have to flesh out. But what happened in this case is there was no comparison whatsoever. Didn't he recognize what the law was? I mean, he says that exceptional case is one that stands out from others with respect to the substantive strength of the party's litigation, litigating positions. He recognizes that, and then he looks at the facts and he comes to a conclusion. Why do you think that he didn't engage in that comparative analysis simply because he didn't say so? Well, Your Honor, he cited the case and he cited the standard. I certainly agree with you with respect to that, but there's no analysis here. What he said was we had three points that we were making. First of all, we were saying that there was no evidence of infringement by a Toshiba product. What he said with respect to that was the jury could have drawn an inference. I disagree with that and have an opportunity to address that briefly. Secondly, we said they baited and switched with respect to their summary judgment position. And what he said with response to that was simply that he was presiding over the trial. He didn't think there were such bad actors, and so he dismissed that one. And then the third one was a deliberate presentation of false royalty calculation. And with respect to that one, he said royalty calculations can have imperfections in them. And so what I'm suggesting to you is that analysis is not any sort of comparison to the normal case. In the normal case, you would at least expect to have the technical expert get up on the witness stand and say, this defendant's product infringes. If you look, for example, at A3116, he admits, I never looked at anything but a generic intel schematic to form my opinion. So he gave no opinion about Toshiba products. That, I submit to you, is an extraordinary case. That is an extraordinary situation. Maybe to the judge it's not extraordinary to rely on circumstantial evidence. Isn't it circumstantial evidence that was relied on here, inferential evidence? Your Honor, the only thing that the judge relied upon was the testimony by the technical expert on redirect after he admitted he couldn't accuse any product of actually infringing. He testified on redirect. He believed laptops generally had this functionality. This is a patent claim that requires specific connections between the processor and what's referred to as a plurality of external bus devices. He never gave any testimony about that with respect to a particular Toshiba product. His testimony was only based on intel schematics, and in fact, that functionality, HD audio, was undisputed, could have been provided by other means, and that connection didn't have to exist in the product. So the belief, the inference, was something that I submit was not a reasonable inference. In fact, based on the evidence in this case, was clearly erroneous. And in response to Your Honor's question, what I would say is, if the judge didn't think that was exceptional, there should have been an explanation for that. We should understand why that's not rare, uncommon, or out of the ordinary with respect to patent cases. And he gave no such explanation. He simply said, well, they could have made this inference. In fact, Your Honor, I would like to point the Court's attention out to Did Mr. Drake not testify that all laptops have HDA implementation? His testimony, Your Honor, was on redirect, I believe laptops have HD audio. This was a completely unsupported opinion. He pointed to nothing to support that opinion. Now, he had been given information. He had been given documents that would have enabled him to reach that opinion, but he didn't. And what you can see in our brief and in the He was testifying as an expert. And he says, I'm an expert in the field, and this is my belief, this is my opinion, that all laptops have HDA implementation. Isn't that sufficient to establish that point, at least? Your Honor, at 3216 of the appendix, the defense expert testified without dispute that that functionality could be provided by other means where there would be no connection that was the one that was accused in this case. So you have an issue of fact. No, Your Honor, the record shows that his testimony was simply focused with respect to Intel generic product specifications, not focused on Toshiba product specifications. But an Intel product wasn't accused here. A Toshiba product was accused here. But the Toshiba products, if I understand correctly, were using the Intel component, right? Well, it's a processor. So the testimony was, yes, there is a processor in the laptop. And it's an Intel processor. Yes, but it has many, many functionalities. And so this is one of many functionalities that may or may not be used. And there was no testimony that it was used in any one of these 950 different laptop models. So with respect to the testimony about those products, Mr. Drake testified that he agreed that the bus device, so this would be the codec, for example, has to be connected to the chipset. That was at A3139. In fact, this testimony appears generally 3139 through 3142. But he gave no opinion about an actual connection of a codec to the chipset. And he agreed that the presence of a chipset did not establish infringement. Well, that's the inference that Judge Jordan was talking about, that you could just make an inference that if it worked, that if there was HD audio and there was no evidence, by the way, about any Toshiba laptop, so there was no evidence that any Toshiba laptop had functioning HD audio, you could guess at that, but there was no evidence in the record with respect to this. He testified, if I want to know if it meets the elements of this claim, and this is at 3140, I'd have to go look either at the schematic or the computer itself. And I never did that. He not only didn't do that with Toshiba products, but in fact the way this case was put together, and this is also in our brief and in the appendix, this was a case against the whole industry. So they had a cookie-cutter, one-size-fits-all strategy that says, we're not going to conform our evidence to the claim language, to the requirements in the claim, and there was no dispute that there had to be a connection in the end because they made a claim construction, they proposed claim constructions, that used that word connected. And so the witness is on the stand, he says, I only looked at an Intel specification, this is at 3116 and 3118, I never looked at the Toshiba documents. So he couldn't make the analysis, he couldn't offer the opinion that he agreed needed to be done in order to satisfy this claim language. So, Your Honor, I think that the inference that the district court proposed was a clearly erroneous one based upon this record, was an abuse of discretion to say this case is not exceptional when you have an expert who never testifies about the actual accused products. I think I'm into my rebuttal time, so I'm going to sit down. Thank you. Good morning. Judge Toronto, may it please the court. I think that I have heard a lot about how the technical expert came to the conclusions he did. Maybe it would be useful for me to walk through exactly what the steps were. So first, as was described, he looked at the Intel chips, the specifications from the Intel and the AMD chips, and he looked to see how the HD audio, whether or not those were performed by those chips, or how they would be performed using the Intel chips. And then he looked also at the HDA specification, which there's a fairly long specification describing how that works. What he then said was, quote, he said, What are you reading from? It's at A3142, and I think most of the testimonial quote is there. If we look on page 520 at lines 16 through 25, he was asked the question, Okay, just having the chip set alone, that doesn't tell you everything you need to know, right? And he said, I don't believe that's true. I think if I can see the specifications for a particular machine, then I can make a reasonable and logical conclusion that if it has that chip set, and it has certain features in it, that it has the codec in it, and therefore all the elements that are necessary for the 163. So then, given that, he then told what the next step in the line is, and this is not one that has been addressed before. If I'm following you, he now has to say something. Here's a basis for inferring there's a codec. Right, and one of the reasons that he's given for inferring there's a codec is because he said, Would microphone jack, for example, work? No, it would not work without a codec. So he has that piece. Now the last piece is important, and this has not been emphasized. I'm looking at now at 522 lines 10 through 17. He was asked, Okay, so what did you give to your damages expert? Did you just give him a list of chips? And the answer is no. I provided him additional criteria in order to search for and identify machines that would meet the HDM implementation. So if I go to page 523, which is on the next page, A3143, and look at lines 5 through 13. He was again asked, So you just gave him the, you said, That's all the information that you were given with respect to infringement, any specific product infringing. And again, he said, No, it's not. As I stated a few minutes ago, I gave him the list and additional features that he should look for in the specification sheets for the computers to indicate that HDMA was actually implemented and functional. So the point of this is that he not only said, Here's HDA chips or chips that support HDA, but then he said, Damages expert, go through all the specifications and look for the appropriate features that would show that HDMA was actually implemented and functional. Can you clarify this? I thought their point is about how he didn't sufficiently testify to support infringement. So how does testimony about what he gave the damages expert bear on that? Because the one missing link that they keep pointing to is whether there is a connection between the chip and the codec. And the point here is he said, If you have a chip and if you have features of a computer, such as audio, then you know that given that chip and that feature, that there is infringement. That there must be a connection between the chip and the codec in order for it to work. And that's what he's done. So he said, I've told you how the chip works. I've told you how HDA audio works. And then now I'm going to say, Okay, go look for those Toshiba laptops, specifications that have that feature implemented. And that's how he has every single element that is necessary for the claim. And this is on the cross-examination by Toshiba? Yes. So I believe, therefore, that the judge was perfectly well within and did not abuse discretion when he said exactly that, that Dr. Dre, testifying in the abstract about how the HDA audio link is configured, testified that hardware components, such as speakers, microphones, or headphone jacks, would not function if they did not connect via an audio codec to the HDA audio link. And that is the basis for the judge's decision, which is well supported. I'd like to turn also to the supposed error of law that Toshiba claimed. As an initial matter, this comparison that we're hearing about was supplied for the first time in the reply brief. So this court, of course, generally disfavors arguments raised for the first time in reply. But it's also wrong on the merits. The Supreme Court in Octane Fitness was very clear in saying there is no precise rule or formula for making the determination of an exceptional case. Instead, it is committed to the equal discretion that should be exercised in light of the considerations that we have identified, namely whether it was exceptionally weak or mitigated. I take it that Mr. Sherwood's argument is that some kind of comparison is essentially inherent in the meaning of exceptional, compared to what, compared to other cases. And the district court in any given case has to supply a sufficient basis to show that a comparative judgment has been made, and that really wasn't done here. I think that is one way to read it, or read their argument, which is that there must be some sufficient detail. I think, as argued, it sounds as though there has to be an explicit, this case compared to that case compared to another case. But let's assume that's not the exact argument. Let's assume that you have to have sufficient description or sufficient argument. I think in this case, the court was quite clear in going through each of the five arguments of why this is an exceptional case, and going through and providing valid reasons for each one of why there was not an exceptionally weak case, why there was not sharp trial tactics. And he explained that, having been there, that he did not see any of the problems that Toshiba has alleged occurred. So I think there was sufficient description in the order for this court to be able to review it, and also for this court to defer to the discretion of the trial judge. Perhaps one way to make the point is that the substantive points that Judge Jordan made themselves carry inherently a comparative implication. I think that's right. I think also that he was not suggesting that this was a frivolous case. So it's extremely hard to see how, if you don't have a frivolous case, how can you be exceptional, which is why we've looked for cases in which- Absent litigation. Absent litigation. That's right. We looked for cases in which there was a case that survived summary judgment, went to trial, survived JML, and the court then said that's exceptionally weak at the end of the day. And we haven't found any. And it's easy to understand why. You've jumped through a lot of hoops in order to get to that final place. Now, obviously St. Clair lost at the end of the day before the jury, but that doesn't make it- by surviving all the steps certainly suggests, at least, that it was not frivolous. What do you say as to the bait-and-switch argument, which was alluded to this morning? Thank you. So I think there's a little bit of confusion on that as well. It suggested that we somehow snickered one of the district court judges into thinking that we had evidence that we didn't have, namely that we were saying, you know, here's going to be evidence about how two video monitors are attached to a computer. But, look, if we go back to what the summary judgment actually said, we'll see something different. If I can direct you to A2508, and it will be about midway through the page. The court- This is the court's order on summary judgment, right? Right, that's exactly right. The court is describing these video theories. And what the court does not say is, I'm going to credit St. Clair that there are, you know, the possibility that Toshiba sold monitors and that they were hooked up in a certain way. Rather, the court says something different, which is on the second sentence of the first full paragraph. He says, Toshiba does not dispute that it sells the separate components that, if attached, may infringe the patent. It's not a question of that we lied and somehow the court credited some lie. The point is, Toshiba didn't put any evidence to the contrary. It did not dispute that there were separate components. I don't know the way this works in the District of Delaware. Are there- do they have a rule that says, with your summary judgment motion, you have to attach a document that says, here are the allegedly undisputed facts, and the other side has to respond and say we dispute facts 1 through 37 and we agree that our name is Toshiba or something? Right. I believe that is how it works. In any event, they did attach to their summary judgment- And specifically attach an assertion that Toshiba sells separate components. I took their argument to be that you made that assertion, they forgot to oppose it, but you really had absolutely no basis for making the assertion in the first place. I'm not sure what to do with that scenario, but is that a description of- What I do know, Your Honor, is that this was- there was discussion about this very issue during the summary judgment argument about whether or not- So it was not a, oops, we forgot, kind of, you know, it just didn't come up. It was discussed in summary judgment during the argument for Judge Stark. And what did- what was shown was that Toshiba sells monitors, and Toshiba sells laptops that when you hook up, look, that Toshiba monitored the laptop, it would directly infringe, would be the argument based upon the expert's testimony. And did that issue come up at the trial? No, because what- They dropped their own- Because it was dropped. At the same time that they dropped their invalidity case, St. Clair dropped its assertions as to these- If I remember right, Toshiba says you dropped it for want of the evidence to back up his assertion.  Well, I mean, Toshiba has provided no evidence that I can see in the record that suggests that. All we have is that- a statement saying we won before summary judgment, but we're just going to drop this theory. So the point, Your Honor, though, is that there was nothing strange about the fact that you happened to narrow your theories before trial, even if you wish you had better evidence or not. And similarly, they narrowed their case as well. So it seems- it's very hard to see how that causes any sort of- anything exceptional about that kind of litigation behavior. Do you know- does either the District of Delaware or the Third Circuit have a rule that I know exists elsewhere, like the Seventh Circuit, or somewhere in this- maybe the Northern District of Illinois, that says facts not disputed by the opponent of summary judgment and asserted in support of summary judgment constitute binding admissions for later in the litigation? I'm not aware of the binding admission portion, Your Honor, at least as to the Third Circuit. If the Court has no further questions. Thank you. So first of all, I would like to draw the Court's attention back to those pages in the record, beginning at 3116, and the notion that Mr. Drake somehow had provided evidence with respect to Toshiba products. If you look at 3116, page 415, starting at line 11, this is actually in the direct examination of the technical expert, not Cross. Mr. Drake, your opinion on how HD audio works is not based on Toshiba schematics. Is that correct? Answer, no, it is not. Question, it is based on Intel schematics. Answer, it is based on the Intel specification. If you look over at the next page, 423, where he starts his analysis, it's all based upon that generic Intel specification. It's not based upon any information relating to Toshiba. If you then pass over to page 3141, page 516, this is cross-examination. Line 18, question, and you have given no testimony today, you have given no testimony about that today with respect to any Toshiba product, have you? Answer, no, not today, no. And I should say the question before it, he said, I need to see some specification, some technical information, before I could reach an opinion with respect to infringement. And then again over on page 519, referring to Toshiba laptops, line 17, question, but you're not giving any evidence about any laptop that has those codecs, are you? Answer, I have not presented evidence here today that would indicate that. Question, so the presence of the chipset by itself does not establish infringement, right? Answer, not by itself, no. Now, with respect to the bait and switch, I'd like to turn to that for a minute, if I may. First of all, I draw the Court's attention to 2497. On that last point, if I understand his testimony, just if it is, the fact that it has the chipset itself is not enough, but if it has the chipset and it implements HDA, then I can infer infringement. And there's no evidence of any laptop implementing HDA. Except for his testimony that all laptops implement HDA. He did say he believed that, Your Honor. But he's an expert. That's his opinion. He gave no basis for that. And in fact, he testified, as I showed here, in order to establish infringement, you'd have to look at the laptop. This claim says, connect the processor to a plurality of external bus devices. Well, that belief does not demonstrate any compliance with that claim requirement. With respect to the bait and switch, if I may turn to that for the moment, and ask the Court to look at 2497, this is at the summary judgment hearing. They have been making a capability argument all along. That's part of how they put together what I've called sort of a cookie-cutter approach, where they never looked at any product. They just said, look, Intel says if you did these things, then you would have a connection. But there's no evidence that anybody did that. And so at 2497, page 37, line 7, they have a new approach.  We're arguing that you sell all the components of the system that if put together would infringe this patent. And he says, we have plenty of evidence to sustain system sales. Well, in fact, they had no evidence to sustain system sales. And given the time, I'm just going to draw your attention in particular to 3163, which is the testimony of their damages expert, in which he said he calculated the royalty, not based on the price of any Toshiba system component. I'm looking at page 603, I'm sorry, 604, line 20. Question, you calculated damages based upon the price of the Intel chipset. Is that right? Answer, that is correct. Question, not on the price of the laptop. Answer, I did not. So they had no evidence in their damages analysis. That would be like the smallest saleable infringing unit? Is that what that would be? Well, Your Honor, what it would be, as they told Judge Stark, is we can prove that Toshiba sells a laptop, monitors, and something called a PCI-1 express card or something. I've never figured it. We've never figured out what that actually is. And we did concede at argument when the judge asked us, Toshiba sells monitors. There was no other concession. You asked some questions about the statement of facts and all that. There was no proceeding like that that happened with respect to this motion at least. So the situation is they said, okay, we're not making a capability argument. You've misunderstood us, but if you look in the record here, you'll see that's exactly what they were doing. They said, we're going to prove system sales. And so what happens is you can see. What happens sounds like the beginning of something new, and you're already a minute over. Oh, I'm sorry, Your Honor. I misread it. Thank you very much. Thanks very much. Case is submitted. We will stand in recess for a few moments. All rise. Your Honor, this court will take a short recess.